Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL XI

| | | |
|---|---|---|
| CHRISTIAN NIEVES ARREAGA<br><br>Recurrido<br><br>v.<br><br>JENNIFER MARIE CINTRÓN GONZÁLEZ<br><br>Peticionaria | KLCE202400866 | *CERTIORARI*<br>Procedente del Tribunal de Primera Instancia, Sala Superior de Caguas<br><br>Civil Núm.:<br>E CU2018-0298 (501)<br><br>Sobre: Custodia |

Panel integrado por su presidenta, la Juez Brignoni Mártir, la Jueza Álvarez Esnard y la Jueza Prats Palerm.

Álvarez Esnard, jueza ponente

## **RESOLUCIÓN**

En San Juan, Puerto Rico, a 20 de septiembre de 2024.

Comparece ante nos Jennifer Cintrón González ("señora Cintrón González" o "Peticionaria") mediante una *Petición de Certiorari* presentada el 9 de agosto de 2024. Nos solicita que revoquemos la *Resolución y Orden* que se dictó el 8 de julio de 2024 y se notificó el 10 de junio del mismo año, por el Tribunal de Primera Instancia, Sala Superior de Caguas ("foro primario" o "foro *a quo*"). Por virtud del aludido dictamen, el foro primario realizó varias determinaciones con relación a la custodia de una menor de edad concebida entre la Peticionaria y el señor Christian Nieves Arreaga ("señor Nieves Arreaga" o "Recurrido"). En concreto, el foro *a quo*, estableció como se llevarían a cabo unas relaciones maternofiliales provisionales, cuál sería la escuela donde estudiaría la hija de las partes y, además, denegó una solicitud de la Peticionaria para que la Unidad Social llevara a cabo un estudio referente a la relocalización de un padre custodio.

Por los fundamentos expuestos a continuación, **denegamos** la expedición del auto de *certiorari.*

**I.**

El 19 de abril de 2024, un panel hermano de este Tribunal de Apelaciones emitió una *Sentencia* en el caso KLCE202301481 en el cual estuvieron involucrados las partes de epígrafe.[1] Surge del aludido dictamen que, en el 2019, el foro primario le otorgó la custodia de la menor I.N.C., quien es hija de las partes, a la señora Cintrón González. No obstante, el 2 de octubre de 2023, el señor Nieves Arreaga solicitó una orden de protección en beneficio de su hija contra la Peticionaria al amparo de la *Ley para Prevención del Maltrato, Preservación de la Unidad Familiar y para la Seguridad, Bienestar y Protección de los Menores*, Ley Núm. 57-2023, 8 LPRA sec. 1641 *et seq*. La aludida solicitud obedecía a que, según el Recurrido, su hija le comunicó que sus hermanos mayores la obligaron realizar actos de índole sexual. En ese sentido, el señor Nieves Arreaga narró que, pese a que las partes habían llegado a un acuerdo para que la menor no tuviera contacto con sus hermanos, la Peticionaria permitió dicho contacto con ellos.

Asimismo, de la referida *Sentencia* del panel hermano se desprende que, ante estos señalamientos por parte del Recurrido, el 20 de octubre de 2023, la Sala Municipal del Tribunal de Primera Instancia de Bayamón celebró una vista. Tras escuchar el testimonio de las partes y de una trabajadora social, la jueza que presidió los procedimientos declaró *Ha Lugar* la solicitud del Recurrido. En consecuencia, expidió la orden de protección contra la señora Cintrón González por el término de un (1) año y, por consiguiente, se le privó de la custodia total de su hija. Esta determinación fue impugnada ante este foro intermedio en el cual el panel hermano revocó dicho dictamen. Específicamente, la *Sentencia* concluyó que la privación de la custodia fue una medida desproporcionada que

---

[1] *Véase*, Apéndice del Recurso, págs. 9-34.

violó el debido proceso de ley de la señora Cintrón González. De esta manera, el panel hermano culminó su dictamen con la siguiente expresión:

> A la luz de lo antes expuesto, **revocamos la orden de protección** expedida contra la peticionaria. Sin embargo, remitimos el caso al Tribunal de Primera Instancia, Sala Superior de Caguas, donde se adjudicó el caso de custodia en el 2019, para que evalúe las circunstancias del caso y adopte las medidas que entienda pertinentes en aras de salvaguardar el bienestar de la menor, incluyendo la determinación de las terapias que debe recibir la misma.[2]

De igual manera, de la parte dispositiva de la precitada *Sentencia* se desprende lo que sigue:

> Notifíquese, además, copia de esta Sentencia a la Jueza Administradora del Tribunal de Primera Instancia, Sala Superior de Caguas, donde se llevó a cabo el caso Christian Nieves Arreaga v. Jennifer Marie Cintrón González, identificado con el alfanumérico ECU2018-0298, relacionado con la custodia de la menor I.N.C., con el propósito de garantizar el bienestar de la menor, tal como se dispone en la sección precedente.[3]

Así las cosas, el 22 de abril de 2024, la señora Cintrón González presentó una *Moción Urgente*.[4] En esta, esbozó que el dictamen del Tribunal de Apelaciones restituyó el *status quo* legal anterior a la expedición de la orden de protección. Por tal motivo, solicitó que la menor I.N.C. fuese puesta inmediatamente bajo su custodia. Igualmente, destacó que en orden de protección revocada se había ordenado al Departamento de la Familia a que estableciera un plan de servicio contra la madre de la menor. Ante esto, la Peticionaria solicitó que el foro primario le ordenara a dicha agencia a que cesara los esfuerzo de continuar con el referido plan de servicios en su contra.

Conforme surge del expediente, los días 1 y 31 de mayo de 2024 se llevaron a cabo dos (2) vistas de seguimiento sobre este caso. Allí se abordaron distintas situaciones en cuanto a la custodia

---

[2] *Íd.,* pág. 33.
[3] *Íd.,* pág. 34.
[4] *Íd.,* págs. 37-39.

de la menor I.N.C. En esencia, el foro primario refirió de manera urgente a la Unidad Social para que realizara una investigación y así poder identificar la ayuda que necesitaría la menor.[5] Del mismo modo, determinó realizar un arreglo de relaciones maternofiliales en lo que se concretaba la mencionada investigación de la unidad social.[6]

Posteriormente, el 19 de junio de 2024, el Recurrido presentó una *Moción Urgente en Cumplimiento de Orden Fijando Posición en Cuanto al Cambio de Escuela.*[7] Mediante esta, explicó que, como consecuencia del cambio de custodia producto de la orden de protección, la menor fue transferida de un colegio localizado en el municipio de Caguas a uno ubicado en Bayamón. En tal sentido, reiteró que, en armonía con el mejor bienestar de la menor, lo ideal era que la menor se mantuviera estudiando en el colegio localizado en Bayamón.

A su vez, en esa misma fecha, el Recurrente presentó otra *Moción Urgente en Cumplimiento de Orden.*[8] En esta, solicitó que se modificara provisionalmente las relaciones filiares con la menor hasta tanto la Unidad Social rindiera su informe con sus recomendaciones. En respuesta, el 24 de junio de 2024, la señora Cintrón González presentó su *Moción en Cumplimiento de Orden.*[9] En síntesis, solicitó que se restituyera la custodia monoparental; que se ordenara a que la menor fuese matriculada en el colegio sito en Caguas; que se corrigiera el referido a la Unidad Social y se enmendara para solicitar un informe inter agencial para evaluar el traslado de la menor a Estados Unidos, ya que la Peticionaria estaba contemplando mudarse a la ciudad de Chicago y, por último, a que

---

[5] *Íd.,* pág. 69.
[6] *Íd.,* págs. 69-70.
[7] *Íd.,* págs. 47-49.
[8] *Íd.,* págs. 51-54.
[9] *Íd.,* págs. 55-64.

se estableciera un plan específico sobre manejo de terapias psicológicas de la menor.

El 10 de julio de 2024, el foro primario emitió una *Resolución y Orden.*[10] En esta, se mantuvo las relaciones filiares provisionales hasta tanto la unidad de trabajo social rindiera un informe social forense. De la misma forma, se determinó que la menor continuaría matriculada en el colegio localizado en Bayamón. Finalmente, en cuanto la solicitud de la señora Cintrón González referente a la evaluación del traslado, el foro primario dispuso que dicha petición era prematura y que una vez se completara el informe de la unidad de trabajo social, entonces estaría en posición para atender ese asunto.

Insatisfecha, el 9 de agosto de 2024, la Peticionaria compareció ante nos mediante una *Petición de Certiorari* y formuló los siguientes señalamientos de error:

> Primero: Erró el Honorable Tribunal Superior de Caguas y abusó de su discreción al otorgarle sumariamente la custodia de la menor I.N.C. al recurrido, a pesar de que al ser anulada por el Tribunal de Apelaciones la orden de protección contra la peticionaria, procede en derecho regresar a la custodia monoparental ostentada por ella al constituir el *status quo* previo a la expedición de la referida orden de protección, lo que constituye una violación a su debido proceso de ley

> Segundo: Erró el Honorable Tribunal Superior de Caguas y abusó de su discreción al modificar por iniciativa propia la custodia de la menor I.N.C. de forma sumaria y sin que existiera una situación extraordinaria, en contravención a la resuelto por nuestro tribunal supremo en *Santana Medrano v. Acevedo Osorio,* 116 DPR 298 (1985).

> Tercero: Erró el Honorable Tribunal Superior de Caguas y abusó de su discreción al disponer que la solicitud de relocalización efectuada por la Peticionaria es prematura.

El 20 de agosto de 2024, esta Curia emitió una *Resolución* en la que se le concedió un término de diez (10) días al Recurrido para que mostrara causa por la cual no debíamos expedir el auto de

---

[10] *Íd.,* págs. 1-6.

*certiorari* y revocar la determinación recurrida. Oportunamente, el 3 de septiembre de 2024, el Recurrido compareció mediante un *Alegato en Oposición a Expedición de Auto de Certiorari.* En esencia, sostuvo que el foro primario tomó en consideración el mejor bienestar de la menor y cumplió con la orden emitida por este foro intermedio en el caso KLCE202301481, por lo cual no cometió ninguno de los errores señalados.

Con el beneficio de la comparecencia de ambas partes, procedemos a exponer la normativa jurídica aplicable a la controversia objeto del recurso de epígrafe.

**II.**

**A. *Certiorari***

"[U]na resolución u orden interlocutoria, distinto a una sentencia, es revisable mediante *certiorari* ante el Tribunal de Apelaciones". *JMG Investment v. ELA et al.*, 203 DPR 708, 718 (2019). "El recurso de *certiorari* es un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un foro inferior". *Rivera et al. v. Arcos Dorados et al.,* 212 DPR 194, 207 (2023). Véase, además, *Torres González v. Zaragoza Meléndez*, 211 DPR 821 (2023).

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R.52.1, establece que el recurso de *certiorari* solo se expedirá cuando se recurra de (1) una resolución u orden sobre remedios provisionales o *injunction* o (2) la denegatoria de una moción de carácter dispositivo. Por excepción, se puede recurrir también de: (1) decisiones sobre la admisibilidad de testigos o peritos; (2) asuntos de privilegios; (3) anotaciones de rebeldía; (4) en casos de relaciones de familia, o (4) en casos que revistan interés público. *Íd.* De igual manera, puede revisarse "cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable

de la justicia". *Íd.* Los límites a la facultad revisora del foro apelativo tienen como propósito evitar la dilación que causaría la revisión judicial de controversias que pueden esperar a ser planteadas a través del recurso de apelación. *Scotiabank v. ZAF Corp. et al.*, 202 DPR 478, 486-487 (2019).

No obstante, la discreción del tribunal apelativo en este aspecto no opera en un vacío ni sin parámetros. *Mun. de Caguas v. JRO Construction*, 201 DPR 703, 712 (2019). La Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, señala los criterios que se deben tomar en consideración al evaluar si procede expedir un auto de *certiorari.* Véase, además, *BPPR v. SLG Gómez-López*, 213 DPR __ (2023), 2023 TSPR 145, resuelto el 19 de diciembre de 2023. Estos criterios son:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

El Tribunal Supremo ha expresado que la discreción es "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". *Mun. de Caguas v. JRO Construction, supra,* págs. 712-713. No obstante, "[a]l denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal

de Apelaciones no tiene que fundamentar su decisión". 32 LPRA Ap. V, R. 52.1.

### B. Custodia

La Carta de Derechos de la Constitución de Puerto Rico, así como la Primera Enmienda de la Constitución de Estados Unidos, consagra expresamente determinados derechos fundamentales de los individuos. Emda. I, Const. EE.UU., LPRA, Tomo 1, ed. 2016, pág. 182; *Rodríguez Rodríguez v. ELA*, 130 DPR 562, 577 (1992). Entre ellos, se encuentra el derecho a la intimidad, el cual incluye la libertad decisoria respecto al cuido y a la educación de los hijos. *Íd.* Sobre el particular, el Tribunal Supremo de Puerto Rico ha expresado que **"los menores de edad no son meras criaturas del Estado; por ende, la relación entre padres e hijos está protegida constitucionalmente y se ha establecido que los padres tienen derecho a decidir sobre el cuido, la custodia y el control de los hijos".** (Énfasis nuestro). *Íd.,* pág. 146. El término custodia ha sido definido por nuestro máximo foro como "la tenencia o control físico que tiene un progenitor sobre sus hijos". *Torres, Ex Parte*, 118 DPR 469, 477 (1987). Además, se ha establecido que la custodia es un componente de la patria potestad, pues esta impone a los padres el deber primario de tener a sus hijos no emancipados en su compañía. *Íd,* pág. 476.

Ahora bien, ningún derecho fundamental es absoluto, por ello, "los derechos de los padres pueden limitarse con el propósito de proteger un interés apremiante del Estado, como lo es [el] bienestar de los menores". *Rexach v. Ramírez,* 162 DPR 130, 147 (2004). Así, por ejemplo, el Estado, en su función *parens patriae*, puede privar, suspender o restringir la custodia y patria potestad de los hijos, cuando estos no puedan satisfacer las necesidades de los menores. *Íd.* La función *parens patriae* del Estado, la cual fue delegada a los tribunales, se ejerce determinando a quién le

corresponde la custodia del menor. *Pena v. Pena,* 164 DPR 949, 959 (2005). **Dicha determinación debe estar "precedida de un análisis objetivo y sereno de todos los hechos que rodean la controversia ante la consideración del magistrado" y "tiene como norte, exclusivamente, garantizar y proteger el mejor interés y bienestar de ese menor".** (Énfasis nuestro) *Íd.; Santana Medrano v. Acevedo Osorio,* 116 DPR 298, 301 (1985). En ese contexto, el Tribunal Supremo de Puerto Rico ha expresado que **los tribunales que dilucidan la custodia o patria potestad de un menor no pueden actuar livianamente.** *Pena v. Pena, supra,* pág. 959. Por consiguiente, los tribunales deben contar con la información más completa y variada posible para resolver correctamente. *Íd.* Conforme a lo anterior, "los tribunales pueden ordenar la comparecencia de cuanta persona entienda pueda ayudarle en el descargo de su delicada misión y puede, asimismo, ordenar aquellas investigaciones de índole social que entienda procedentes y convenientes". *Íd.; Santana Medrano v. Acevedo Osorio, supra,* pág. 301. Lo anterior debido a que, mientras más información se recopile, más informada y justa será la decisión que se tome. *Pena v. Pena, supra,* pág. 962.

Por otro lado, es importante mencionar que las determinaciones sobre custodia tienen un carácter *sui generis* y no constituyen cosa juzgada. *Figueroa v. Del Rosario,* 147 DPR 121, 128 (1998). Estas determinaciones están sujetas a revisión judicial ante el foro de instancia "si ocurre un cambio en las circunstancias que así lo justifique", "tomando en consideración los mejores intereses y el bienestar de los menores". *Íd.* En consecuencia, estos dictámenes nunca son estrictamente finales ni definitivos. La determinación que emita el foro de instancia para resolver una solicitud de modificación de un decreto de custodia o alimentos, por cambios en las circunstancias, adjudica una reclamación entre las partes y

**constituye una nueva sentencia de la cual puede apelarse**. *Íd,* pág. 129.

### III.

Expuesto el marco jurídico y ponderados los argumentos presentados por las partes resolvemos que no se han producido las circunstancias que exijan nuestra intervención en esta etapa de los procedimientos. Al amparo de los criterios que guían nuestra discreción, no intervendremos en la determinación recurrida. En el presente caso, la Peticionaria no ha demostrado que el foro de instancia se excedió en el ejercicio de su discreción, ni que erró en la interpretación del derecho. Tampoco constató que el abstenernos de interferir en la determinación recurrida constituiría un fracaso irremediable de la justicia en esta etapa de los procesos. Por lo cual, somos del criterio que en el presente caso procede que se deniegue el recurso de *certiorari* de epígrafe.

### IV.

Por los fundamentos expuestos, **denegamos** la expedición del auto de *certiorari*.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA.  LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones